**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 19th day of December, 2012.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

SALVATORE JOSEPH MARSALA and
LINDA JEAN MARSALA,　　　　　　　　　　　　　　　　Case No. 10-22983
　　　　Debtors.　　　　　　　　　　　　　　　　　　　Chapter 7

FRANK A. MARSALLA,
　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 10-6263

SALVATORE JOSEPH MARSALA,
　　　　Defendant.

### MEMORANDUM OPINION AND ORDER
### ON COMPLAINT TO DETERMINE DISCHARGEABILITY

On November 28, 2012, trial was held on plaintiff's Complaint for Determination That

Debt Is Non-Dischargeable under Bankruptcy Code §§523(a)(2), (a)(4), and (a)(6).[1]

Additionally, plaintiff requests of this Court a money judgment in the amount that this Court

---

[1] Doc. No. 1.

finds non-dischargeable. Plaintiff appeared in person and through counsel, John R. Campbell, Jr. The defendant in this adversary proceeding, and debtor in the main bankruptcy case, Salvatore Joseph Marsala, Sr., who also uses the first names Sam and Sal, did not appear in person but appeared through counsel, Sam Mirabile. There were no other appearances. This is a core proceeding and the Court has jurisdiction.[2] Mr. Mirabile orally moved the Court for a continuance of the evidentiary hearing; for the reasons stated on the record, that oral motion for continuance was denied.

The Court, after considering the evidence and the arguments of counsel, took the matter under advisement. The Court is now ready to rule.

## Background

This is another sad tale of a family splintered by money. Plaintiff is 84 years old, and defendant is plaintiff's son. Defendant filed a Chapter 7 bankruptcy petition on August 30, 2010. His wife, Linda Jean Marsala, is the co-debtor; she is not a party in this adversary proceeding. Defendant listed plaintiff as a general unsecured creditor with a disputed claim in the amount of $465,000, with reference to an underlying state court lawsuit. The only real property the debtor listed in his schedules is his residence, which is claimed as exempt. Plaintiff timely filed his complaint for determination that the debt is nondischargeable pursuant to 11 U.S.C. §§523(a)(2), (a)(4), and (a)(6).[3] Plaintiff also requests this Court reduce this debt to judgment. Defendant disputes that he has any debt owed to plaintiff, his father, and if any debt is owed, that the debt is dischargeable.

---

[2] 28 U.S.C. §157; 28 U.S.C. §1334.
[3] Future references to Title 11 in the text shall be to the section number only; unless noted otherwise all statutory references are to the Bankruptcy Code.

The legal battle between plaintiff and defendant predates the filing of the bankruptcy petition. Plaintiff sued defendant in the Circuit Court of Jackson County, Missouri, in 2008. Plaintiff alleged the defendant improperly converted plaintiff's monies totalling $737,483.54. On the eve of a jury trial, the Jackson County lawsuit was settled by Judgment Entry docketed on March 3, 2010.[4] Under the terms of the Judgment Entry, the defendant confessed judgment in favor of plaintiff in the amount of $465,000. Under the Judgment Entry, the defendant also agreed to convey his interest in certain real estate and stocks to plaintiff; the value of the real estate and the stocks would then be credited to the $465,000 judgment. These conveyances of the real estate and stock did not occur. At trial, neither plaintiff nor defendant alleged that the Judgment Entry has collateral estoppel effect in these proceedings as to the amount of the debt or as to dischargeability of the debt. However, defendant requests that if the Court finds that defendant owes a debt to plaintiff, that the amount be limited to the $465,000 settlement set out in the Judgment Entry, and that the Court should not enter judgment for the full monetary demand of $737,483.54. Regardless, this Court is not bound by collateral estoppel or issue preclusion as to the amount or nature of defendant's obligations to plaintiff since neither of these issues was actually litigated in the underlying state court action, and the litigation was settled in the Judgment Entry.

Plaintiff alleges that the debt owed to him by defendant should not be discharged under §523(a)(2)(A) because the defendant obtained monies from plaintiff by the use of false pretenses, false representations, and actual fraud. Plaintiff argues in the alternative that the debt should not be discharged under §523(a)(4) because defendant's actions constituted fraud or

---

[4] See plaintiff's Exhibit 13.

defalcation while acting in a fiduciary capacity, or embezzlement or larceny. Plaintiff further claims that the debt should be excepted from discharge under §523(a)(6) because it arises from a willful and malicious injury, and more specifically, that defendant intentionally converted plaintiff's monies. Defendant denies all of these allegations. Defendant claims that he, not plaintiff, was the owner of the monies allegedly converted.

**Findings of Fact**

Plaintiff testified at trial. Plaintiff is 84 years old, is slightly hearing impaired, and makes use of a hearing aid. He required the assistance of a walker. However, this Court was able to evaluate the acuity of plaintiff's recollections and finds his testimony truthful, reliable and accurate.

Defendant is plaintiff's oldest son. When plaintiff's father returned from World War II in 1945, he started a fund from his resources that is loosely referred to as the "family pie." Although the monies in the "family pie" fluctuated over the years, it was usually in the hundreds of thousands of dollars. Upon the death of plaintiff's father, plaintiff's brother managed the funds until his death in 1987. From 1987 through 2004, plaintiff and his sister managed the family fund. All of the monies in the family fund were generated by plaintiff's father, brother, sister and plaintiff himself. Plaintiff's sister passed away in 2004 at which time all of the funds were owned by plaintiff and titled in his name. In September 2005, plaintiff had an operation on his leg and was unable to walk. At that time, plaintiff decided to add defendant's name, as his oldest son, to plaintiff's various accounts that aggregated the family fund. Although at times referred to as the "family pie" or "family fund," starting in 2004 the funds were owned exclusively by plaintiff. The purpose of the family fund was to provide, at plaintiff's sole discretion, assistance to family members and an eventual inheritance to family members upon

plaintiff's death.

Before plaintiff added defendant to the various accounts, the accounts were in plaintiff's name only. Plaintiff needed defendant's assistance to manage the funds, but use of the funds remained within plaintiff's sole direction. Plaintiff has four sons and two daughters. When one of these children needed funds, then plaintiff disbursed monies to that particular child. Plaintiff was the owner and gatekeeper to the funds, and any request for use of those funds was made to him.

Over the years, plaintiff disbursed monies to his children for expenses such as their education, business enterprises, and the purchase of amenities, such as vehicles. These disbursements were seldom paid back to plaintiff, although in one situation in which one of the sons received funds to start a business, the majority of this disbursement was repaid to plaintiff. Plaintiff remained the sole owner of the funds, which were located in various bank accounts. It was plaintiff's intention that the funds be disbursed to his children and grandchildren upon his death, and he did not gift the funds to defendant. Defendant's name was added to the accounts solely to assist plaintiff with management of the funds, including moving funds between different banks to procure a better rate of return. Defendant held nothing more than bare legal title to the funds and the attendant bank accounts. In 2006 and 2007, the funds were disbursed from various bank accounts as reflected in plaintiff's Exhibit 7, and summarized as follows:

| | |
|---|---|
| Great American Bank | $198,072.68 |
| Central Bank of Kansas City | $ 92,414.58 |
| Commerce Bank of Kansas City | $179,526.49 |
| Los Padres Bank/Harrington Bank | $160,500.00 |
| Los Padres Bank/Harrington Bank | $ 25,396.01 |
| First Federal Bank | $ 81,573.78 |

A complicating factor existed with regard to the two Los Padres Bank/Harrington Bank accounts, which the Court will discuss later in this opinion. With that caveat, the funds were

comprised of the above accounts. There were other assets, such as real estate, which are not pertinent to this case. Plaintiff also may have executed a power of attorney appointing defendant as attorney in fact; this is unclear from the record. Monthly statements for all but one of the accounts were eventually mailed to defendant's home address. Only the statements from the Great American Bank were mailed to the plaintiff's home address.

Plaintiff used the funds to pay for defendant's education. Defendant holds numerous degrees, including one for engineering and an M.B.A. Plaintiff trusted defendant to assist in the management of the family fund, and plaintiff was not concerned that defendant would make improper disbursements from plaintiff's accounts.

During the middle of September 2007, plaintiff noticed that approximately $10,000 had been withdrawn from one of the accounts without his knowledge. Plaintiff questioned defendant about this withdrawal, and defendant assured plaintiff that the monies would be replaced. Plaintiff called his son on a daily basis in this regard for approximately 20 days. After plaintiff confronted defendant about the missing monies, the defendant proceeded to withdraw all of the monies from the various bank accounts during early October 2007.[5] The relationship between the parties quickly deteriorated. Plaintiff felt betrayed by defendant and his actions to withdraw $737,483.54 from the various accounts--what plaintiff referred to as the "run on the banks."

The funds deposited in the two Los Padres Bank/Harrington Bank (Los Padres accounts) have a slightly different history. With regard to the other bank accounts, the plaintiff does not know what defendant did with the withdrawn funds. However, the funding for the Los Padres

---

[5] These withdrawals exclude the two Los Padres Bank accounts, which were closed with final withdrawals during 2006. As indicated, this portion of the opinion is not pertinent to the analysis as to the Los Padres Bank accounts.

- 6 -

12.12.19 Marsala Memorandum Opinion.wpd

accounts was generated from the rehabilitation and eventual sale of a property at 533 Gillis in Kansas City, Missouri (Gillis property), which is a 16-unit apartment building. Plaintiff assisted with the initial purchase of the building and provided to defendant and another son $135,000 to apply toward the purchase price. In addition to repayment of the $135,000, the defendant and and that other son agreed to pay to plaintiff $50,000 as a return on the investment. There was also established a $425,000 line of credit with Central Bank to fund the rehabilitation of the Gillis property.[6] During the rehabilitation, the defendant drew $900 per week in compensation, and the plaintiff eventually confronted the defendant about these withdrawals. During 2006, the building sold for approximately $950,000, which generated net proceeds of approximately $500,000. Part of these proceeds was then deposited into the Los Padres accounts. Although plaintiff received the $50,000 investment return, he was never repaid the original $135,000 investment. The Los Padres accounts also listed the defendant first as the account holder and then the plaintiff, and the account address was the defendant's residence. The defendant represented to plaintiff that he would repay the $135,000 initial investment to plaintiff; this was never done.

After the initial confrontation between plaintiff and defendant in September 2007, and excluding the two Los Padres accounts, the accounts were closed as follows:

(1) The Great American Bank (now known as "Enterprise Bank and Trust") account was closed on October 5, 2007, with a final withdrawal of $35,072.68 and aggregate withdrawals

---

[6] The Gillis property is located in an historic area of Kansas City wherein many buildings were undergoing substantial renovation to create loft apartments. This enterprise predated the financial collapse experienced by the financial markets in 2007 and 2008. Prior to the financial crisis, the market appreciation of these buildings was robust.

from October 2006 through October 5, 2007, in the amount of $198,072.68;[7] (2) the Commerce Bank account was closed on October 4, 2007, with a single withdrawal of $179,526.49;[8] (3) the First Federal Bank account was closed on October 5, 2007, with a single withdrawal of $81,573.78;[9] and (4) the Central Bank of Kansas City account was closed on October 9, 2007,[10] with a single withdrawal of $92,414.58. The two Los Padres Bank accounts were closed in July 2006 and October 2006,[11] and the final withdrawals from the accounts were $160,500.00 and $25,396.01; both of these closures predated the conversation between plaintiff and defendant in September 2007.

The Court did not find it necessary to its decision to review plaintiff's Exhibit No. 11, the deposition transcript of the defendant in the underlying state court action, and therefore plaintiff's request for admission of same as an exhibit is moot.

### Analysis and Conclusions of Law

**Gillis Property**

The funds in the Los Padres accounts could have and should have been used to pay plaintiff his $135,000 investment in the Gillis building. However, defendant's failure to do so represents a breach of contract and does not fall within the ambit of one of the exceptions to discharge plead by plaintiff. The exceptions to discharge plead by plaintiff require more than just a showing of the breach of contract, but require proof of a narrow class of torts.[12] Otherwise,

---

[7] Plaintiff's Exhibit No. 2.
[8] Plaintiff's Exhibit No. 8.
[9] Plaintiff's Exhibit No. 6.
[10] Plaintiff's Exhibit No. 3.
[11] Plaintiff's Exhibit Nos. 4 and 5.
[12] *See, e.g.*, 4 COLLIER ON BANKRUPTCY ¶ 523-12[1] at 523-91 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012), discussing §523(a)(6).

the vast majority of debts listed in consumer bankruptcies would not be discharged since the non-payment of those obligations represents a breach of the contract. More must be proven to establish that a debt is excepted from discharge under §§523(a)(2), (4) and (6).

**Section 523(a)(4)**

Since this Court has already concluded that the appropriation of the funds in the Los Padres accounts does not give rise to a nondischargeable debt, the focus of the Court's legal analysis pertains only to the funds in the other accounts, which aggregate $551,587.53. Plaintiff has carried his burdens of proof to establish that $551,587.53 is the amount of the debt owed by the defendant to plaintiff and that this debt is nondischargeable under §523(a)(4).[13] Defendant's name was added to these accounts as a convenience only, and it was never plaintiff's intent or action to convey a gift of the funds to defendant. If a gift were intended, then retention of the plaintiff's name on these accounts, including reference to plaintiff's trust on one account, would not be necessary. It is common practice for parents to add children to the title of real and personal property to allow the child to assist with the administration and management of the assets. This was the intent and the action of plaintiff when he added defendant's name to the accounts. The facts do not support, and strongly belie, defendant's argument that the monies were gifted from plaintiff to defendant. Plaintiff intended to retain ownership of the monies and to be the sole director with regard to disbursement of the family fund to family members. It was plaintiff's intent that the family fund would eventually be distributed to his children and

---

[13] The burden of proof to establish nondischargeability under §§523(a)(4) and (a)(6) is by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991). Additionally, plaintiff has established the amount of the debt under both the preponderance of the evidence standard and the clear and convincing evidence standard.

- 9 -

12.12.19 Marsala Memorandum Opinion.wpd

grandchildren, not solely to one of his sons. Defendant, by his actions, fraudulently appropriated plaintiff's monies that had been entrusted to defendant and had been placed into the hands of the defendant solely to assist in the management of the monies. Defendant fraudulently appropriated the plaintiff's monies and converted such property to his own use. Within approximately 20 days after the confrontation between plaintiff and defendant, defendant proceeded to drain all of the accounts. Defendant did not provide any explanation as to what he did with the monies. The Court finds that defendant's actions rise to a level of embezzlement as contemplated under §523(a)(4) and the debt in the amount of $551,587.53 is not dischargeable. "'Embezzlement is defined under federal common law as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'"[14]

The evidence demonstrates that defendant intentionally misappropriated plaintiff's monies, did not return the monies to defendant, and did not account for the property so entrusted to him. Defendant engaged in fraud and intentional deceit, including the withdrawal of monies from accounts that were not his, the renaming of accounts to place his name first, the addition of his Social Security number, and the changing of the account addresses so that statements would go to his residence and not to the plaintiff. Defendant engaged in intentional actions when he absconded with plaintiff's monies and then failed to return same after he was given only conditional authority to assist in the management of the funds for plaintiff.[15]

---

[14] *Columbian Nat'l Title Ins. Co. v. Utterback (In re Utterback),* 2004 Bankr. LEXIS 1463, at *22 (Bankr. D. Kan. March 3, 2004) (quoting *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988)). "The amount excepted from discharge is equal to the amount misappropriated, rather than any greater amount that may be owed to the creditor." See 1 HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE §15.4.3.5.1, at 487 (footnote omitted) (9th ed. 2009 & Supp. 2010).

[15] *See*, generally, 4 COLLIER ON BANKRUPTCY ¶ 523.10[1] at 523-71 to 523-72 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012).

The debt in the amount of $551,587.53 is not dischargeable because defendant embezzled the monies, and this exception to discharge does not require that the defendant be acting in a fiduciary capacity.[16] This exception applies even if defendant's name were placed on the various accounts for the lawful purpose of assisting his father in the management of the funds.

> In short, section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement.[17]

**Section 523(a)(6)**

In order to establish a debt is nondischargeable under §523(a)(6), the plaintiff must show: (a) debtor committed a wrongful and intentional act; (b) the act necessarily caused injury to plaintiff; (c) the act was without just cause or excuse; and (d) debtor acted with the specific intent to cause injury to the plaintiff or knew or believed injury to the plaintiff was substantially certain to occur as a result of his actions.[18] This exception to discharge applies in instances of intentional conversion. Plaintiff, who at the time he added defendant's name to the accounts was 78 years old and unable to walk because of surgery, did so because his son could assist him with the management of the funds. The defendant exceeded the limited authority for which his name was added to the accounts and improperly diverted the monies to his own use. Defendant's actions resulted in the intentional conversion of plaintiff's property by defendant. Defendant did not suggest that he was not responsible for the withdrawal of funds from the various bank

---

[16] *Id.*, ¶ 523.10[1][d] at 523-72.
[17] *Id.*, ¶ 523.10[2] at 523.77.
[18] *In re Pasek*, 983 F.2d 1524, 1527 (10th Cir. 1993); *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

accounts. His argument is that he was the owner of the funds contained in the bank accounts. This assertion is untrue. Defendant was not the owner of the funds contained in the various bank accounts. The defendant deliberately, intentionally and wrongfully withdrew funds from the bank accounts for his own use. He did so without plaintiff's consent. He knew and intended that his behavior would result in the injuries sustained by the plaintiff, that is, the financial loss occasioned by his actions. Once found out, defendant then immediately withdrew the remaining funds from the various accounts and fully depleted these assets owned by his father. Defendant's actions were without just cause or excuse and violated the bond of trust between parent and child. Such acts could only lead to one result: a dramatic financial loss to his father. Defendant converted plaintiff's $551,587.53 that were held in the bank accounts of the family fund. Defendant's debt to plaintiff in the amount of $551,587.53 is nondischargeable as it is a debt arising from willful and malicious injury as contemplated in §523(a)(6).

**Section 523(a)(2)(A)**

As to §523(a)(2)(A), the Court will not address this exception to discharge, which can apply to the obtainment of money or property to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." This Court has already found that the debt in the amount of $551,587.53 is not dischargeable under §§523(a)(4) and (a)(6). It is therefore unnecessary for the Court to discern whether defendant's actions would bring the debt within the ambit of this exception to discharge.

**Entry of Judgment**

This Court enters a monetary judgment in the amount of the nondischargeable debt, which is $551,587.53. Liquidation of any claim that plaintiff may have against defendant arising from the Gillis property is not necessary to this Court's determination as to nondischargeability of a debt, and a final judgment may be entered without liquidation of this claim. The Court therefore abstains from adjudication of any claim the plaintiff may have arising from the Los Padres accounts and the Gillis property. Defendant requested at closing argument that if the Court enters a finding of nondischargeability, that such judgment be limited to the $465,000 settlement journalized in the state court action. Neither party argues that this Court is bound by collateral estoppel. This Court is not bound by the settlement amount, a settlement with which defendant did not comply. Therefore, the Court enters a judgment of nondischargeability and a monetary judgment in the amount of $551,587.53 in plaintiff's favor against the defendant, with interest accruing thereon as of the date the state court Judgment Entry was docketed, March 3, 2010, with defendant to pay plaintiff's costs.

It is therefore ordered by this Court that judgment shall be entered in favor of plaintiff, Frank A. Marsalla, and against debtor and defendant Salvatore Joseph Marsala, Sr., on plaintiff's Complaint for Determination that Debt Is Non-Dischargeable under §§523(a)(2), (4), and (6)[19] in the amount of $551,587.53. The Court finds that the debt is not discharged under §§523(a)(4) and (a)(6) and finds it unnecessary to consider the dischargeability of the debt under §523(a)(2). It is further ordered that the Gillis debt in the alleged amount of $185,896.01 is hereby

---

[19] Doc. No. 1.

12.12.19 Marsala Memorandum Opinion.wpd

discharged, and the Court abstains from liquidation of same. It appears from the testimony at trial the defendant may have held assets, property, or interests that were not disclosed in defendant's bankruptcy proceedings.

It is further ordered that the foregoing constitutes findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Fed. R. Bankr. P. 9021 and Fed. R. Civ. P. 58.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS